UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NATIONWIDE INSURANCE
COMPANY OF AMERICA, et al.,

    Plaintiffs,

    v.

ELISET GOMEZ, et al.,

    Defendants.

No. 2:16-cv-01114-MCE-CKD

**MEMORANDUM AND ORDER**

This case concerns a civil action filed by Defendant Eliset Gomez in the San Joaquin County Superior Court. That suit sought to hold Defendants Raviez Khan, Naheem Qayyum, and Nighat Khan (collectively with Ms. Eliset hereafter "Defendants") liable for the death of Nathaniel Khan, the minor son of Raviez and Ms. Gomez, at the residence of Raviez's parents, Naheem and Nighat.[1] Naheem and Nighat were insured at the time via homeowners and automobile policies issued respectively by Plaintiffs here, Nationwide Insurance Company of America ("Nationwide") and AMCO Insurance Company ("AMCO") (collectively "Plaintiffs"). Plaintiffs brought this suit in federal court pursuant to its diversity jurisdiction, seeking declaratory relief that any liability attributed to Naheem and Nighat in the underlying actions is not covered by Plaintiffs' respective

---

[1] Given the identical surnames of several of the parties, all Defendants other than Ms. Gomez will be referred to by their first names.

1

insurance policies. Presently before the Court are the parties' cross Motions for Summary Judgment, by which they agree that AMCO owes no coverage to any insured and is thus entitled to judgment. ECF Nos. 23, 25. For the reasons below, Plaintiffs' motion is further GRANTED as to Nationwide as well, and Defendants' motion is thus DENIED.[2]

## BACKGROUND[3]

### A. Factual Background

Ms. Gomez is the mother of Nathaniel, who was born September 5, 2009, and died March 6, 2013. Raviez is Nathaniel's father. He and Ms. Gomez never married. Defendants Naheem and Nighat are the biological parents of Raviez Khan, and are thus Nathaniel's grandparents.

Ms. Gomez had sole physical custody of Nathaniel on March 6, 2013, but Raviez requested to have visitation on that day, and Ms. Gomez agreed. While visiting with his father, Nathaniel died from injuries sustained when he was struck by a Chevrolet Tahoe vehicle outside the home of his father and grandparents.

At approximately 10:00 a.m. that morning, Nighat and a non-party, Morad Khan, drove to Nathaniel's residence where he lived with his mother. They retrieved Nathaniel intending to transport him back to his grandparent's home. Unfortunately, however, Morad was thereafter involved in a vehicle collision and his vehicle was rendered inoperative.

Raviez was contacted and informed of the collision. He arrived shortly thereafter to pick them up and transported them to his parents' home. Shortly after arriving at and entering the residence, Raviez received a telephone call from another non-party,

///

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[3] The parties have stipulated to the following facts which are taken, for the most part verbatim, from Defendants' moving papers. ECF No. 25.

Raviez's cousin Ahmed Shoaib, discussing the damage to the vehicle that had been involved in the collision.

Raviez informed his mother that he needed to leave the residence to meet with his cousin to further discuss the damage, and he asked his mother to supervise Nathaniel while he was gone. At that time, Nighat was holding Nathaniel on her lap and she agreed to watch him until Raviez returned.

Raviez exited the front door of the residence and walked in a northerly direction to a 2007 Chevrolet Tahoe Sport Utility Vehicle ("SUV") that was parked on the south side of the arched curb directly opposite the home. After Raviez exited the residence and walked to the vehicle, Nathaniel exited the residence as well, without Nighat noticing, in pursuit of his father. In the meantime, Raviez walked around the rear of the Tahoe, opened the driver's door, and entered the vehicle. He started the engine, shifted the transmission from Park to Drive and drove the vehicle forward. Raviez almost immediately felt a "bump" sensation, so he stopped and disembarked to investigate.

When Raviez walked around the front of the SUV he saw Nathaniel lying in the street adjacent to the curb bleeding from the head. Raviez quickly realized that the "bump" sensation was caused when the right rear tire of the Tahoe passed over Nathaniel's head. Nathaniel was transported to the hospital via an ambulance where he later succumbed to his injuries.

### B. Procedural Background

On April 30, 2014, Ms. Gomez filed a complaint in the Superior Court of California, County of San Joaquin, case No. 39-2014-00310630-CU-PU-STK. (The "Gomez complaint"). The Gomez complaint named Raviez, Naheem, and Nighat as defendants. It generally alleged that Raviez Khan negligently operated the 2007 Chevrolet Tahoe SUV causing Nathaniel's death and that Naheem and Nighat negligently supervised Nathaniel, allowing him to exit the residence and to be struck by the vehicle.

///

In approximately July 2014, counsel for Raviez, Naheem, and Nighat (hereafter the "Insureds") tendered defense of the <u>Gomez</u> lawsuit to Nationwide, as Nationwide had issued a policy of Homeowner's insurance to Naheem Qayyum, policy No. HNC 0021675042, which was in effect from June 18, 2012, to June 18, 2013.  Nationwide declined coverage under the Homeowner's Policy based on the "Motor Vehicle Liability" exclusion, which provides that personal liability and medical payment coverages do not apply "if, at the time and place of an 'occurrence'":

> A law or regulation issued by a government agency, requires the involved "motor vehicle" to have been registered for it to be used on public roads or property . . .

"Motor Vehicle Liability" is also specifically defined on the first page of the policy's "**DEFINITIONS**" section:

> 1. "Aircraft Liability", "Hovercraft Liability" "Motor Vehicle Liability" and "Watercraft Liability", . . . mean the following:
>
> a. Liability for "bodily injury" or "property damage" arising out of the:
>
> 1) Ownership of such vehicle or craft by an "insured";
>
> 2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;
>
> 3) Entrustment of such vehicle or craft by an "insured" to any person;
>
> 4) **<u>Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured";</u>** and
>
> 5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

Thereafter, counsel for Ms. Gomez, and counsel for the Insureds, sent multiple re-tender letters to Nationwide, and in each case Nationwide responded in writing, affirming its position that no coverage existed under the Homeowner's Policy for the Insureds due to the "Motor Vehicle Liability" exclusion.

///

4

On June 30, 2015, Ms. Gomez and the Insureds signed an assignment in which each of the Insureds purported to assign to Ms. Gomez the rights they held against Nationwide herein under the Homeowner's Policy. In exchange, Ms. Gomez agreed not to execute upon any judgment against the assignors.

On September 30, 2015, a judgment was entered against the Insureds in the Gomez lawsuit, finding Nighat negligent in the supervision of Nathaniel.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying the summary judgment standard to a motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "However, if the nonmoving party bears the burden of proof on an issue at trial, the moving party need not produce affirmative

evidence of an absence of fact to satisfy its burden." In re Brazier Forest Prods. Inc., 921 F.2d 221, 223 (9th Cir. 1990). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A. Enforceability of the Motor Vehicle Exclusion

Under California law, insurance policy exclusions require both "[c]onspicuous placement of exclusionary language" and that "[t]he language itself . . . be plain and clear." Haynes v. Farmers Ins. Exch., 32 Cal. 4th 1198, 1211 (2004) (quoting Jauregui v. Mid–Century Ins. Co., 1 Cal. App. 4th 1544, 1550 (1991)). The insurer holds the burden of fulfilling these requirements of conspicuousness and clarity. Id. at 1204. If that burden is not met, the exclusion is unenforceable. Id. Furthermore, "it is well established that 'mere receipt of [an endorsement] . . . does not serve to charge the insured with constructive knowledge of [an] exclusion' it contains." Id. at 1210 (alterations in original) (quoting Underwriters Ins. Co. v. Purdie, 145 Cal. App. 3d 57, 65 (1983)).

Here, the Motor Vehicle Exclusion was both conspicuous and clear. It was the very first exclusion contained in the separate, centered, bolded, and capitalized section bearing the title "**SECTION II – EXCLUSIONS**." Moreover, the specific exclusion "**Motor Vehicle Liability**," which is addressed in subsection "A," is also itself bolded as well. Finally, on page 1 of the main policy form, the "**DEFINITIONS**" section is also identified with a centered, bolded and capitalized heading followed by the explanation that "certain words and phrases are defined as follows," and again the very first definition is as to

7

"Motor Vehicle Liability." None of these provisions were buried in fine print. Instead, they were clearly identified in their proper policy sections. These characteristics render exclusions conspicuous under California law. See Thompson v. Mercury Cas. Co., 84 Cal. App. 4th 90, 97 (2000) (finding limitation on liability not sufficiently conspicuous because "the language . . . is not bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any other way distinguished from the rest of the fine print."). Thus, the Motor Vehicle Exclusion was sufficiently conspicuous to be enforceable.

The Motor Vehicle Exclusion was also sufficiently clear, stating in plain language that there is no liability coverage arising out of the ownership, maintenance, occupancy, operation, use, loading or unloading, entrustment of a vehicle by any person. Nor was there any coverage for the "failure to supervise or negligent supervision of any person involving such a vehicle." This language clearly lays out that the policy provides no coverage for any claims arising out of an injury sustained as the result of virtually any conceivable claim that might be made as a result of motor vehicle liability. Nor is this language ambiguous. For example, nothing in the exclusion can be reasonably read to limit the supervision language to exclude only those claims arising out of the failure to supervise a driver as opposed to any other individual. Rather, the language indicates that negligent supervision claims are excluded to the extent an insured fails to properly supervise "any person," not merely any driver. Because the Motor Vehicle Exclusion is conspicuous, clear, and unambiguous, the Court must next determine whether it applies to the underlying action.

**B.     Applicability of the Exclusion to the Underlying Action**

Courts interpret the terms of the policy by applying the same doctrines used in interpreting ordinary contracts. Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1115 (1999) ("While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."). Thus, "[w]hen interpreting a policy provision, [courts] give its words their ordinary and popular sense except where

8

they are used by the parties in a technical or other special sense." Haynes, 32 Cal. 4th at 1204.

Here, Defendants contend that even if the Motor Vehicle Exclusion is not stricken based on the above arguments, it still should not apply because aside from the use of the motor vehicle, which is clearly excluded under the policy, Nighat's negligent supervision of Nathaniel acted as an independent and concurrent proximate cause for Nathaniel's death and is therefore not subject to the exclusion. Defendants thus take the position that the concurrent causation doctrine applies, which requires insurance coverage when liability is caused both by an insured risk (here purportedly the negligent supervision) and an excluded risk (here the operation of the motor vehicle). State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94, 102 (1973) (in bank). This argument is foreclosed by Farmers Ins. Exchange v. Superior Court (Bautista), 220 Cal. App. 4th 1199 (2013).

In Bautista, a small child was run over in the driveway of her grandparents' home by her grandfather when she was in the care of her grandmother. As here, the mother sued the grandparents for wrongful death, negligence, and negligent supervision. According to the mother, the grandfather was negligent in operating the vehicle, and the grandmother was likewise negligent in failing to "supervise, watch, manage and control" the child. Id. at 1202. The insurance company there sought declaratory relief to establish that the grandparents' insurance policy's motor vehicle exclusion barring coverage for bodily injury that "results from the ownership, maintenance, use, loading or unloading of . . . motor vehicles" precluded coverage. Id. at 1202-03.

There, as here, it was clear that any claim pertaining to the use of the vehicle was excluded, and the parties' dispute thus centered on whether the grandmother's negligent supervision of her granddaughter constituted a second, independent cause of the accident. The court concluded it did not, that the only proximate cause of the

///

///

9

granddaughter's death was the use of the vehicle, and that there was no independent cause without a connection to the vehicle itself:

> [T]he excluded . . . motor vehicle, played an active role in causing the injury by . . . running over the victim . . . . The injury involved no instrumentality other than the vehicle itself, and there would have been no accident without the use or operation of the vehicle.
>
> . . . .
>
> [T]he supervision here was negligent only because it exposed the children to the danger of negligent automobile use.
>
> . . . .
>
> [I]t was [the grandmother's] failure to supervise [the granddaughter] when she went out to greet [the grandfather] as he drove home in his pickup truck that subjected [the granddaughter] to the conditions causing [her] death. Had [the grandmother's] failure to supervise [the granddaughter] occurred at any other time, [the granddaughter] would not have been exposed to the risk of [the grandfather's] truck arriving home . . . [The grandmother's] alleged negligent supervision would not have rendered her and [the grandfather] liable independently of [the grandfather's] driving of his vehicle, and was not a "totally independent" cause of [the granddaughter's] death.

Id. at 1209-12 (internal citations and quotation marks omitted). The facts here are materially identical in that any liability arising out of Nighat's negligent supervision of Nathanial cannot be separated from the liability incurred as a result of Raviez's operation of the motor vehicle. As such, Nathaniel's death is an "occurrence" that is excluded under the clear terms of the policy.[4]

Moreover, the policy language in this case is even more supportive of a finding that the exclusion applies because here, unlike in Bautista, the Nationwide policy also expressly excluded negligent supervision and failure to supervise claims. Accordingly,

---

[4] This is contrary to cases such as State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94 (1973), where courts have found separate and independent concurrent causation thus bringing an accident within the policy coverages. In Partridge, by way of example, the injury giving rise to the coverage dispute occurred when an insured had modified a firearm to have a "hair trigger," and the gun accidentally discharged inside of the insured's vehicle injuring his passenger as he navigated a bumpy road in pursuit of a jackrabbit. The court reasoned that although the gun discharged in the vehicle, it was covered under the insured's homeowner's policy because, due to the negligent modification of the trigger mechanism, it could have happened anywhere and caused the same injury. Such is not the case here where the potential for injury cannot be separated from the operation of the motor vehicle itself.

10

the policy here made explicit that which was implicit in Bautista, namely that supervision claims were not covered. As such, Nathaniel's death, which despite its holding here, the Court recognizes as among the most tragic events a parent could ever be expected to endure, is not covered by the Nationwide policy and summary judgment in favor of Nationwide is appropriate.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (ECF No. 23) is GRANTED, and Defendants' Motion for Summary Judgment (ECF No. 25) is DENIED. The Clerk of the Court is directed to enter judgment in favor of Plaintiffs and to close this case.

IT IS SO ORDERED.

Dated: September 28, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE